UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 11577 GAO

Paul Watson, Janet Watson, Andrew Watson, David )
Watson and Paul Watson, in his capacity as Trustee of )
Mitson Realty Trust, )
)
MAGISTRATE JUDGE _____
Plaintiffs, )
)
)
v. )
)
Town of Bellingham, Richard F. Ranieri, in his )
official capacity and individually, Lee G. Ambler, )
in his official capacity and individually, Scott Ambler, )
in his official capacity and individually, Bertrand )
Guerin, in his official capacity and individually, )
Dennis Fraine, in his official capacity and individually, )
Jerald A. Mayhew, in his official capacity, John Emidy, )
in his official capacity and individually, and Edward )
Wirtanen, in his official capacity and individually, )
)
Defendants. )
_____ )

| | |
|---|---|
| RECEIPT # | _____ |
| AMOUNT $ | 150 |
| SUMMONS ISSUED | yes |
| LOCAL RULE 4.1 | _____ |
| WAIVER FORM | _____ |
| MCF ISSUED | _____ |
| BY DPTY. CLK. | _____ |
| DATE | _____ |

## VERIFIED COMPLAINT and REQUEST FOR APPROVAL OF MEMORANDUM OF LIS PENDENS

### PARTIES

1.      The plaintiffs, Paul Watson and Janet Watson, husband and wife, are individuals residing in Millis, Norfolk County, Massachusetts. Both, now American citizens, were born and raised in Jamaica.

2.      The plaintiff, Andrew Watson, is an individual residing in Millis, Norfolk County, Massachusetts. An American citizen, he was born and initially raised in Jamaica.

3.      The plaintiff, David Watson, is an individual residing in San Diego, California. An American citizen, he was born and initially raised in Jamaica

4.    The defendant, Town of Bellingham, is a duly organized political subdivision of the Commonwealth of Massachusetts situated in Norfolk County, Massachusetts.

5.    The defendant, Richard F. Ranieri (hereinafter "Ranieri"), is an individual residing in Bellingham, Norfolk County, Massachusetts. At times relevant hereto, Ranieri was the Fire Chief of the Town of Bellingham acting under the color of state law. In his capacity as Fire Chief, Ranieri participated in formulating and implementing town policy in connection with the enforcement of state and local fire prevention/safety laws and regulations.

6.    The defendant, Lee G. Ambler (hereinafter "L. Ambler"), is an individual residing in Bellingham, Norfolk County, Massachusetts. At times relevant hereto, L. Ambler was Town Counsel to the Town of Bellingham acting under the color of state law. In his capacity as Town Counsel, L. Ambler was responsible for monitoring the actions of town officials and employees engaged in law enforcement activities, and for screening, prosecuting and supervising all litigation involving the town.

7.    The defendant, Scott Ambler (hereinafter "S. Ambler"), is an individual residing in Bellingham, Norfolk County, Massachusetts. At times relevant hereto, S. Ambler was Town Counsel to the Town of Bellingham acting under the color of state law. In his capacity as Town Counsel, S. Ambler was responsible for monitoring the actions of town officials and employees engaged in law enforcement activities, and for screening, prosecuting and supervising all litigation involving the town.

8.    The defendant, Bertrand Guerin (hereinafter "Guerin"), is an individual residing in Bellingham, Norfolk County, Massachusetts. At times relevant hereto, Guerin, brother-in-law to Ranieri, was employed as Deputy Fire Chief in the Town of Bellingham and was acting under the color of state law.

9.    The defendant, Dennis Fraine (hereinafter "Fraine"), is an individual residing in Bellingham, Norfolk County, Massachusetts. At times relevant hereto, Fraine was Town Administrator to the Town of Bellingham acting under the color of state law. In his capacity as Town Administrator, Fraine was responsible for the operation and management of town government and implementation of official town policy.

10.    The defendant, Jerald A. Mayhew, is an individual residing in Bellingham, Norfolk County, Massachusetts. He is a member and Chairman of the Town of Bellingham Board of Selectmen, acting under the color of state law. In this capacity as Selectmen and Chairman, he represents the chief executive officers and official policymakers for the Town of Bellingham, past and present.

11.    The defendant, John Emidy (hereinafter "Emidy"), is an individual residing in Blackstone, Worcester County, Massachusetts. At times relevant hereto Emidy was the building inspector for the Town of Bellingham.

12.    The defendant, Ed Wirtanen (hereinafter "Wirtanen") is an individual residing in Bellingham, Norfolk County, Massachusetts. At times relevant hereto, Whitenan was the Health Agent for the Town.

FACTS

13.    At all times relevant hereto, Paul Watson was the Trustee of Mitson Realty Trust, a Massachusetts Real Estate Trust (hereinafter "Mitson") u/d/t dated October 30, 1985, and registered in the Registered Land Court Section of the Norfolk County Registry of Deeds, Document No. 479603.

14. At all times relevant hereto, Paul Watson, in his capacity as Trustee of Mitson Realty Trust, was the record owner of certain real property located at 26 Pearl Street, Bellingham, Massachusetts and known as the "Carryville Mill".

15. "Carryville Mill" is a 22-acre industrial/business zoned property at 23 and 26 Pearl Street in Bellingham, Norfolk County, Massachusetts. It runs approximately three-thousand linear feet along the Charles River and is improved by a 150,000 square foot, 180 year old mill, approximately 1.5 miles from Interstate 495.

16. Sometime in December 1989, a sprinkler pipe main located under the Carryville Mill froze and burst as the result of record low winter temperatures. Although the Town of Bellingham Water Department claimed they realized a massive loss of water in late December 1989 and early January 1990, the source remained unknown.

17. On January 5, 1990, the Town of Bellingham, aided by consultants, specifically Water Wizard of Rhode Island, located the source, specifically a sprinkler main break at Carryville Mill.

18. On January 5, 1990, after determining the source and location of the main break, employees of the Town of Bellingham shut off the water supply to the sprinkler main at Carryville Mill, thereby rendering the entire sprinkler system inoperable.

19. Approximately sixty (60) days after the Town of Bellingham shut off the water supply to the sprinkler system at Carryville Mill, approximately 87.5% of the sprinkler system had been restored. Prior to the resumption of water supply to the repaired section of the sprinkler system, remedial work was inspected and approved by the Bellingham Water and Fire Departments.

20.    The remaining 12.5% of the sprinkler system at Carryville Mill was not immediately restored due to the fact that the affected sprinkler main was grossly inaccessible to repair personnel.

21.    The remaining 12.5% of the sprinkler system affected only one tenant of Carryville Mill. This tenant was Tastex Corp., a company owned and operated by the former owner of Carryville Mill, Louis Goldstein, who, for several years prior to Paul Watson's purchase of Carryville Mill, had been allowed by the Town of Bellingham to operate the premises with numerous building code violations, including a totally inoperable sprinkler system.

22.    During Louis Goldstein's tenure as owner of Carryville Mill, the defendants had knowledge of the defective and nonconforming conditions at Carryville Mill but failed and refused to prosecute Louis Goldstein or take any action whatsoever to compel compliance with applicable state and local building and fire prevention/safety laws and regulations.

23.    During the period January 1990 through November 1990, Paul Watson maintained close contact with the defendants, apprising them of his financial condition and efforts to repair the inoperable section of the sprinkler system.

24.    On July 10, 1990, Ranieri filed in the Milford District Court an Application for Complaint against Paul Watson for the alleged "shutting off of a fire protection device" under G.L. c.148, §27A. Ranieri stated on the application that the date of offense was January 5, 1990 to present.

25.    Ranieri filed the above-described Application for Complaint in the Milford District Court on July 10, 1990, despite the fact that he knew that jurisdiction under G.L. c.148, §27A was properly found in the Superior Court.

26.    Ambler permitted Ranieri to file the above-described Application for Complaint in the Milford District Court when he knew, or should have known, that jurisdiction under G.L. c.148, §27A was proper in the Worcester County Superior Court.

27.    At all times relevant hereto, the defendants knew that Paul Watson did not "shut off, disconnect, obstruct, remove or destroy" any part of the sprinkler system at Carryville Mill.

28.    On or about October 5, 1990, a Summons and Complaint against Paul Watson was issued in the Milford District Court without any form or probable cause or clerk's hearing. The Complaint, filed by Ranieri and Guerin, stated that Paul Watson "did disconnect a sprinkle system in the building of Mitson Realty in violation of G.L. c.148, §27A."

29.    During the period November 15, 1990 through December 12, 1991, Paul Watson was required to make eleven (11) court appearances in connection with the above-described criminal charges. During each such court appearance, Paul Watson was subjected to the intimidation and humiliation associated with the criminal court appearance, including threats of arrest, imprisonment and a massive fine.

30.    During the period November 15, 1990 through December 12, 1991, Paul Watson made numerous pleas to the defendants to terminate the above-described criminal charges on the grounds that they were false, discriminatory and not advanced in good faith.

31.    On or about December 12, 1991, and upon the motion of Paul Watson's defense attorney, the above-described criminal proceedings were dismissed, voluntarily, by the district attorney on the grounds that Paul Watson was denied due process of law and further did not engage in any criminal conduct as alleged by the defendants.

32.    On or about December, 1995, the Town of Bellingham, acting through the authority of Ambler, the selectman defendants, and Emidy, filed another criminal suit against Paul Watson claiming violations of the Bellingham building code.

33.    This filing of claims for building code violations was baseless and grounded in fiction as no supporting facts existed for such claims. The filing was a continuation of the systematic harassment of the Plaintiffs, because of their Jamaican descent among other reasons, through baseless allegations of various town code violations, in an attempt to force them out of the Carryville Mill property.

34.    In 1998, with the criminal charges still pending in the Housing Court, the Town of Bellingham filed a civil suit in the same court for the exact same charges. Through the use of this civil lawsuit, the defendants closed the Carryville Mill, depriving Mr. Watson of income.

35.    On or about 12/29/1993 and 10/25/1991, the Town of Bellingham took title to both parcels respectively of the Carryville Mill through a tax title taking. On or about 7/17/2001 and 1/8/2002 the rights of redemption were foreclosed.

36.    Upon information and belief, this seizure of the Carryville Mill by the Town of Bellingham because of delinquency on payment of property taxes was done through improper means and procedure, for example inadequate Notice to the Plaintiffs.

37.    The seizure of the Carryville Mill by the Town of Bellingham for delinquency on payment of property taxes was done through and for improper means because it was a direct and proximate consequence of the defendants denying the Plaintiffs the ability to earn rental income from the Carryville Mill.

38.    On other occasions, the Town of Bellingam, through the authority of the defendant selectman, and with agreement from Ambler, Wirtanen, and Emidy, trespassed upon

the Carryville Mill with the intent of harassing the tenants of such mill and cutting off Paul Watson's revenue stream.

39.    On January 31, 2002, Paul Watson was in his office at the Carryville Mill when he was violently and aggressively removed from the property by Bellingham police officers acting under color of law and with the authority and consent of the above named defendants. The Town of Bellingham proceeded to forward charges against Mr. Watson for trespass and breaking and entering as a consequence of his presence on the Carryville Mill property.

40.    The Town of Bellingham, through the authority of the Selectman, with the knowledge, consent, and proactive involvement of Fraine, S. Ambler, Wirtanen and Mayhew proceeded to deny Paul Watson access to his documentation and possessions located at the Carryville Mill up to and including the present day, allowing him limited access only on June 7, 2003, after threat of legal action by the plaintiffs.

41.    The Town of Bellingham, through its representatives, repeatedly harassed the tenants of the Carryville Mill throughout the period of ownership by the Mitson Realty Trust by trespassing on the property and stating to such tenants that the property, among other things, was going to be taken at any moment.

42.    The continuing pattern of conduct stated in the preceding paragraphs began in December of 1989 and has been continuing up to and including the present day.

43.    As a consequence of such continuing pattern of conduct, Paul Watson and the Mitson Realty Trust lost possession of the property, all to the Plaintiffs' detriment.

## COUNT I – MALICIOUS PROSECUTION

44.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 43 as if separately set forth herein.

45.    Defendants Ranieri, Guerin and Emidy commenced the above-described criminal proceedings against Paul Watson maliciously and without probable cause.

46.    Defendants S. Ambler, L. Ambler, Fraine, Ranieri, Guerin, Emidy, Wirtanen, and Mayhew maliciously permitted the institution of the above-described criminal proceedings against Paul Watson, despite their knowledge that no probable cause existed to charge him with a criminal offense.

47.    Defendants S. Ambler, L. Ambler, Fraine, Mazzola, Lowry, Bissonnette, Cibley and Tuttle maliciously permitted the continued prosecution of the above-described criminal proceedings against Paul Watson for a period in excess of one (1) year, despite their knowledge that no probable cause existed to charge him with a criminal offense.

48.    The above-described criminal proceedings against Paul Watson were legally and finally terminated in his favor on December 12, 1991.

49.    The filing of claims by the above mentioned defendants against Paul Watson for building code violations and related claims in December 1995 were without factual basis and filed for no other purpose than to continue a systematic pattern of harassment through color of authority against Mr. Watson. To date, Mr. Watson has been denied his right to a trial by jury.

50.    The criminal proceedings which commenced in January 31, 2002, were filed with no probable cause existing for the charges.

51.    As a direct and proximate result of the above-described malicious prosecution, Paul Watson was subjected to the threats, intimidation and humiliation of the criminal court experience.

52.    As a direct and proximate result of the above-described malicious prosecution, Paul Watson was caused to suffer severe and irreversible damage to his business and personal reputation and other substantial damages, including lost earnings.

53.    As a direct and proximate result of the above-described malicious prosecution, Paul Watson was caused to suffer severe emotional distress and mental anguish resulting in impairing physical injuries.

54.    As a direct and proximate result of the above-described malicious prosecution, Paul Watson was caused to incur substantial attorneys' fees to secure the dismissal of said erroneous criminal charges.

WHEREFORE, the Plaintiffs demand judgment in their favor and against each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, interest, costs, attorney's fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT II – ABUSE OF PROCESS

55.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 54 as if separately set forth herein.

56.    Defendants Ranieri, Guerin and Emidy commenced the above-described criminal proceedings against Paul Watson maliciously, without probable cause under M.G.L. c. 148, sec. 27A in the wrong court, for a purpose for which said statute was not intended, with the intent of harassing Paul Watson and denying him the use and enjoyment of the real property at Carryville Mill and the continued operation of his business thereat.

57.    Defendants S. Ambler, L. Ambler, Fraine, Ranieri, Guerin, Emidy, Wirtanen, and Mayhew permitted the institution of criminal proceedings against Paul Watson under G.L. c.148,

§27A, in the wrong court, for a purpose for which said statute was not intended, with the intent of harassing Paul Watson and denying him the use and enjoyment of the real property at Carryville Mill and the continued operation of his business thereat.

58.    Defendants S. Ambler, L. Ambler, Fraine, Ranieri, Guerin, Emidy, Wirtanen, and Mayhew permitted the continued prosecution of criminal proceedings against Paul Watson under G.L. c.148, §27A, for a period in excess of one (1) year, for a purpose for which said statute was not intended, with the intent of harassing Paul Watson and denying him income, the use and enjoyment of the real property at Carryville Mill, and the continued operation of his business thereat.

59.    The above-described criminal proceedings against Paul Watson were legally and finally terminated in his favor on December 12, 1991.

60.    The filing of claims by the above mentioned defendants against Paul Watson for building code violations and related claims in December 1995 were without factual basis and filed for no other purpose than to continue a systematic pattern of harassment through color of authority against Mr. Watson.

61.    The criminal proceedings which commenced in January 31, 2002, were filed with no probable cause existing for the charges.

62.    As a direct and proximate result of the above-described malicious abuse of process, Paul Watson was subjected to the threats, intimidation and humiliation of the criminal court experience, and a criminal record.

63.    As a direct and proximate result of the above-described malicious abuse of process, Paul Watson was caused to suffer severe and irreversible damage to his business and personal reputation and other substantial damages, including lost earnings.

64.     As a direct and proximate result of the above-described malicious abuse of process, Paul Watson was caused to suffer extreme emotional distress and mental anguish resulting in impairing physical injuries.

65.     As a direct and proximate result of the above-described malicious abuse of process, Paul Watson was caused to incur substantial attorneys' fees to secure the dismissal of said erroneous criminal charges.

WHEREFORE, the Plaintiffs demand judgment in their favor and against each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, interest, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66.     The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 65 as if separately set forth herein.

67.     The defendants engaged in extreme and outrageous conduct by wrongfully filing and vigorously prosecuting the above-described criminal charges against Paul Watson without due process or probable cause and, in some cases, in a court lacking jurisdiction.

68.     The defendants further engaged in wanton and reckless conduct by wrongfully filing and vigorously prosecuting the above-described criminal charges against Paul Watson without due process or probable cause and in a court lacking jurisdiction.

69.     The defendants, by virtue of the above-described acts and/or omissions, intended to inflict emotional distress upon Paul Watson.

70.    As a direct and proximate result of the defendants' above-described extreme and outrageous conduct, Paul Watson suffered severe emotional distress and mental anguish resulting in impairing physical injuries.

WHEREFORE, the Plaintiffs demand judgment in their favor and against each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, interest, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

71.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 70 as if separately set forth herein.

72.    The defendants engaged in extreme and outrageous conduct by wrongfully filing and vigorously prosecuting the above-described criminal charges against Paul Watson without due process or probable cause and in a court lacking jurisdiction.

73.    The defendants further engaged in wanton and reckless conduct by wrongfully filing and vigorously prosecuting the above-described criminal charges against Paul Watson without due process or probable cause and in a court lacking jurisdiction.

74.    The defendants, by virtue of the above-described acts and/or omissions, knew or should have known, that emotional distress was the likely result of the above-described extreme and outrageous conduct.

75.    As a direct and proximate result of the defendants' above-described conduct, Paul Watson suffered severe emotional distress and mental anguish resulting in impairing physical injuries.

WHEREFORE, the Plaintiffs demand judgment in their favor and against each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, interest, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT V – STATE CIVIL RIGHTS ACT

76.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 75 as if separately set forth herein.

77.    The defendants, by virtue of the above-described actions, employed the use of threats, intimidation and coercion to interfere with Paul Watson's rights under the law as guaranteed by the Constitution and laws of the United States and Commonwealth of Massachusetts.

78.    The above-described actions of the defendants, in the employment of threats, intimidation and coercion to interfere with the rights of Paul Watson, constitute violations of the Massachusetts Civil Rights Act, G.L. c.12 §§ 11H and 11I.

79.    As a direct and proximate result of said violations of G.L. c.12 §§ 11H and 11I, Paul Watson was deprived of income, the use and enjoyment of the real property at Carryville Mill, and the continued operation of his business there.

80.    As a direct and proximate result of the above-described state law civil rights violations, Paul Watson was caused to suffer severe and irreversible damage to his business and personal reputation and other substantial damages, including lost earnings, loss of use of property, loss of possession of property and loss of title to property.

81.    As a direct and proximate result of the above-described state law civil rights violations, Paul Watson was caused to suffer extreme emotional distress and mental anguish resulting in impairing physical injuries.

82.    As a direct and proximate result of the above-described state law civil rights violations, Paul Watson was caused to incur substantial attorneys' fees to secure the dismissal of said erroneous criminal charges and building code violation claims and the cessation of said threats, intimidation and coercion. Paul Watson is also entitled to recover his attorneys' fees incurred as a result of bringing this civil rights action against the defendants.

WHEREFORE, the Plaintiffs demand judgment in their favor and against each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, return of title to the property, possession of the property, interest, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT VI – G.L. CHAPTER 258, §1 ET SEQ.

83.    The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 82 as if separately set forth herein.

84.    At all times relevant hereto, the individual defendants were "public employees" of the Town of Bellingham within the meaning of G.L. c.258, § 1, acting within the scope of said employment.

85.    At all times relevant hereto, the Town of Bellingham and its public employees breached the above-described duty owed to Paul Watson by failing to properly train, supervise and oversee Ranieri, Guerin, Emidy and others with respect to their enforcement of state and

local fire prevention/safety laws and regulations, building regulations and other regulatory powers and requirements.

86.    At all times relevant hereto, the Town of Bellingham and its public employees breached the above-described duty owed to Paul Watson by failing to properly train, supervise and oversee S. Ambler, L. Ambler, Fraine, Ranieri, Guerin, Emidy, and Wirtanen with respect to the actions taken to deprive Paul Watson of his rights under the law.

87.    At all times relevant hereto, the Town of Bellingham and its public employees breached the above-described duty owed to Paul Watson by failing to take appropriate corrective measures in response to complaints made by Paul Watson to town policymaking officials concerning the actions of defendants Fraine, Ranieri, Guerin, Emidy, Wirtanen and others.

88.    At all times relevant hereto, the Town of Bellingham, by virtue of the actions of its policymaking officials, breached the above-described duty owed to Paul Watson by adopting the practices of defendants Fraine, Ranieri, Guerin, Emidy, Wirtanen and others as town policy and, further, by permitting the continued prosecution of said criminal charges for a period exceeding one (1) year.

89.    On or about January 17, 1992, the plaintiffs, through counsel, complied with the presentment requirements of G.L. c.258, §4 and thereby placed the Town of Bellingham on notice of the foregoing claim.

90.    As a direct and proximate result of the above-described negligence of the Town of Bellingham, Paul Watson was subjected to the threats, intimidation and humiliation of the criminal court experience along with the imposition of a criminal record.

91.    As a direct and proximate result of the above-described negligence of the Town of Bellingham, Paul Watson was denied due process of law and deprived of income, the use and

enjoyment of the real property at Carryville Mill, and the continued operation of his business there.

92.     As a direct and proximate result of the above-described negligence of the Town of Bellingham, Paul Watson was caused to suffer severe and irreversible damage to his business and personal reputation and other substantial damages, including lost earnings, loss of use of property, loss of possession of property and loss of title to property.

93.     As a direct and proximate result of the above-described negligence of the Town of Bellingham, Paul Watson was caused to suffer extreme emotional distress and mental anguish resulting in impairing physical injuries.

94.     As a direct and proximate result of the above-described negligence of the Town of Bellingham, Paul Watson was caused to incur substantial attorneys' fees.

WHEREFORE, the Plaintiffs demand judgment in their favor and against the Town of Bellingham for just and substantial damages, interest, return of title to the property, possession of the property, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT VII – 42 U.S.C. §1983 – DENIAL OF EQUAL PROTECTION

95.     The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 94 as if separately set forth herein.

96.     The defendants, by virtue of the above-described acts and/or omissions, interfered with and deprived Paul Watson of his rights to equal protection under the law in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Federal Civil Rights Act, 42 U.S.C. §1983.

97.    The defendants, by virtue of the above-described acts and/or omissions, engaged in a pattern of stringent code enforcement activities against Paul Watson, whereas similarly situated property owners, including the former owner of Carryville Mill, remained unprosecuted for similar and even more egregious conduct.

98.    The defendants permitted the commencement of the above-described criminal proceedings against Paul Watson, whereas they failed and refused to prosecute similarly situated property owners in the town, including the former owner of Carryville Mill, for similar and even more egregious conduct.

99.    The above-described acts or omissions of the defendants constitute a selective prosecution of the laws against Paul Watson as well as an arbitrary, discriminatory and unequal application of the law in violation of Paul Watson's rights to equal protection under the Fourteenth Amendment.

100.    The Town of Bellingham, by virtue of the actions of its policymaking officials, adopted the above-described practices of defendants Ranieri, Guerin, S. Ambler, L. Ambler, Emidy, Wirtanen and others as town custom, practice and policy, and further failed to remedy the above-described unconstitutional practices when put on notices thereof by Paul Watson.

101.    As a direct and proximate result of the above-described unconstitutional practices of the defendants, Paul Watson was denied equal protection under the law and was subjected to the threats, intimidation and humiliation of the criminal court experience.

102.    As a direct and proximate result of the above-described unconstitutional practices of the defendants, Paul Watson was caused to suffer severe and irreversible damage to his business and personal reputation and other substantial damages, including lost earnings, loss of use of property, loss of possession of property and loss of title to property.

103.   As a direct and proximate result of the above-described unconstitutional practices of the defendants, Paul Watson was caused to suffer extreme emotional distress and mental anguish resulting in impairing physical injuries.

104.   As a direct and proximate result of the above-described unconstitutional practices of the defendants, Paul Watson was caused to incur substantial attorneys' fees to secure the dismissal of said erroneous charges. Paul Watson is also entitled to recover his attorneys' fees incurred as a result of bringing this civil rights action against the defendants.

WHEREFORE, the Plaintiffs demand judgment in their favor and against the Town of Bellingham and each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, return of title to the property, possession of the property, interest, costs, attorney's fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT VIII – 42 U.S.C. §1983 – DENIAL OF DUE PROCESS

105.   The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 104 as if separately set forth herein.

106.   The defendants, by virtue of the above-described acts and/or omissions, interfered with and deprived Paul Watson of his right to due process under the law as protected by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution in violation of the Federal Civil Rights Act, 42 U.S.C. §1983.

107.   The defendants, by virtue of the above-described acts and/or omissions, engaged in a pattern of willful, wanton and reckless conduct against Paul Watson.

108.   The defendants, by virtue of the above-described acts and/or omissions, engaged in a policy of deliberate indifference to the constitutional rights of Paul Watson.

109.   The Town of Bellingham, by virtue of the actions of its policymaking officials, adopted the practices of defendants Ranieri, Guerin, Ambler and Emidy as town custom, practice and policy, and further failed to remedy the above-described unconstitutional practices when put on notice thereof by Paul Watson.

110.   The Town of Bellingham, by virtue of the actions of its policymaking officials, permitted defendants Ranieri, Guerin, S. Ambler, L. Ambler, Emidy, Wirtanen and others to continue with the prosecution of said erroneous criminal charges and baseless claims for building code violations for a continuing and ongoing period of years commencing in 1989 up to and including the present day as the Plaintiffs continue to be denied access to their property.

111.   As a direct and proximate result of the above-described unconstitutional practices of the defendants, Paul Watson was denied due process of law and was subjected to the threats, intimidation and humiliation of experience in the criminal, housing and civil courts.

112.   As a direct and proximate result of the above-described unconstitutional practices of the defendants, Paul Watson was caused to suffer severe and irreversible damage to his business and personal reputation and other substantial damages, including lost earnings, loss of use of property, loss of possession of property and loss of title to property.

113.   As a direct and proximate result of the above-described unconstitutional practices of the defendants, Paul Watson was caused to suffer extreme emotional distress and mental anguish resulting in impairing physical injuries.

114.   As a direct and proximate result of the above-described unconstitutional practices of the defendants, Paul Watson was caused to incur substantial attorneys' fees to secure the dismissal of said erroneous charges. Paul Watson is also entitled to recover his attorneys' fees incurred as a result of bringing this civil rights action against the defendants.

WHEREFORE, the Plaintiffs demand judgment in their favor and against the Town of Bellingham and each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, return of title to the property, possession of the property, interest, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT IX – LOSS OF CONSORTIUM – JANET WATSON

115.   The plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 114 above.

116.   At all times relevant hereto, plaintiff Janet Watson was the spouse of Paul Watson.

117.   By reason of the above-described injuries suffered by Paul Watson, Janet Watson has been denied all the rights, interest, benefits and privileges of their marital relationship, including the society, companionship, consortium, care, consideration, support and aid of her husband.

118.   As a direct and proximate result of the aforesaid loss of consortium suffered by Janet Watson, her comfort and happiness have been impaired and will continue to be impaired into the future.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Town of Bellingham and each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, interest, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT X – LOSS OF CONSORTIUM – ANDREW WATSON

119.   The plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 118 above.

120.   At all times relevant hereto, Andrew Watson was the child of Paul Watson.

121.   By reason of the above-described injuries suffered by Paul Watson, Andrew Watson has been denied all the rights, interest, benefits and privileges of the parent-child relationship, including the society, companionship, consortium, care, consideration, support and aid of his father.

122.   As a direct and proximate result of the aforesaid loss of consortium suffered by Andrew Watson, his comfort and happiness have been impaired and will continue to be impaired into the future.

WHEREFORE, the Plaintiffs demand judgment in their favor and against the Town of Bellingham and each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, interest, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT XI – LOSS OF CONSORTIUM – DAVID WATSON

123.   The plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 122 above.

123.   At all times relevant hereto, David Watson was the child of Paul Watson.

124.   By reason of the above-described injuries suffered by Paul Watson, David Watson has been denied all the rights, interest, benefits and privileges of the parent-child relationship, including the society, companionship, consortium, care, consideration, support and aid of his father.

125.    As a direct and proximate result of the aforesaid loss of consortium suffered by David Watson, his comfort and happiness have been impaired and will continue to be impaired into the future.

WHEREFORE, the Plaintiffs demand judgment in their favor and against the Town of Bellingham and each individual defendant, both personally and in their official capacity, jointly and severally, for just and substantial damages, punitive damages, interest, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances

## COUNT XII – INTERFERENCE WITH CONTRACTUAL RELATIONS

126.    The plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 125 above.

127.    At all times relevant hereto, Paul Watson was under contract with various third parties he retained to inspect and design plans and specifications for the renovation and refurbishment of the Carryville Mill.

128.    At all times relevant hereto, Paul Watson, in his capacity as Trustee of Mitson Realty Trust, was under contract with each tenant at Carryville Mill relative to the portion of the premises leased by such tenant.

129.    At all times relevant hereto, Ranieri, Guerin, S. Ambler, L. Ambler, Emidy, Wirtanen and others had knowledge of the above-described contracts and intentionally and maliciously interfered with same, causing Paul Watson to suffer substantial damages including the loss of services and tenants, expenses, costs, attorneys' fees, loss of earnings, harm to his reputation and emotional distress.

WHEREFORE, the Plaintiffs demand judgment in their favor and against defendant Richard F. Ranieri for just and substantial damages, return of title to the property, possession of

the property, interest, costs, attorneys' fees and for such other and further relief as the Court deems reasonable under the circumstances.

## COUNT XIII – SLANDER

130.   The plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 129 above.

131.   At all times relevant hereto, the Town of Bellingham, through its representatives and others, uttered false and malicious statements relating to alleged misconduct on the part of Paul Watson in connection with his ownership and management of Carryville Mill and as to the condition of title to the property, namely telling tenants, among other things, that the property was dangerous and that the property was going to be taken at any time.

132.   As a direct and proximate result of the false statements made by Ranieri, Guerin, Ambler and Emidy, Paul Watson has suffered severe and irreversible damage to his business and personal reputation and other substantial damages, including lost earnings and emotional distress.

WHEREFORE, the Plaintiffs demand judgment in their favor and against the defendants Ranieri, Guerin and Ambler, jointly and severally, for just and substantial damages, interest, costs, attorney's fees and for such other and further relief as the Court deems reasonable under the circumstances.

## THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS

Paul Watson, individually and in his capacity as Trustee of Mitson Realty Trust, Janet Watson, Andrew Watson and David Watson,
By their attorney,

_____

James P. Ehrhard (BBO#651797)
9 North Ashland Street
Worcester, MA. 01609
Office: 508.791.8411; Cell: 574.315.4339

**VERIFICATION**

I, Paul Watson, being duly sworn, depose and say that I am one of the Plaintiffs in the above entitled action, that I have read the foregoing 'Verified Complaint and Request for Approval of Memorandum of Lis Pendens' and know the contents thereof, that the facts stated therein are true, and that no material facts have been omitted therefrom, all to the best of my knowledge. I sign this under the pains and penalties of perjury this 29th day of June, 2004.

Paul Watson

**VERIFICATION**

I, Janet Watson, being duly sworn, depose and say that I am one of the Plaintiffs in the above entitled action, that I have read the foregoing 'Verified Complaint and Request for Approval of Memorandum of Lis Pendens' and know the contents thereof, that the facts stated therein are true, and that no material facts have been omitted therefrom, all to the best of my knowledge. I sign this under the pains and penalties of perjury this 29th day of June, 2004.

Janet Watson

**VERIFICATION**

I, Andrew Watson, being duly sworn, depose and say that I am one of the Plaintiffs in the above entitled action, that I have read the foregoing 'Verified Complaint and Request for Approval of Memorandum of Lis Pendens' and know the contents thereof, that the facts stated therein are true, and that no material facts have been omitted therefrom, all to the best of my knowledge. I sign this under the pains and penalties of perjury this 29th day of June, 2004.

Andrew Watson

**VERIFICATION**

I, David Watson, being duly sworn, depose and say that I am one of the Plaintiffs in the above entitled action, that I have read the foregoing 'Verified Complaint and Request for Approval of Memorandum of Lis Pendens' and know the contents thereof, that the facts stated therein are true, and that no material facts have been omitted therefrom, all to the best of my knowledge. I sign this under the pains and penalties of perjury this 29th day of June, 2004.

David Watson