UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11577-GAO

PAUL WATSON, JANET WATSON, ANDREW
WATSON, DAVID WATSON, and PAUL
WATSON in his capacity as Trustee of MITSON
REALTY TRUST,
          PLAINTIFFS

v.

TOWN OF BELLINGHAM, RICHARD F.
RANIERI, Individually and in his official
capacity, LEE G. AMBLER, Individually and
in his official capacity, SCOTT AMBLER,
Individually and in his official capacity,
BERTRAND GUERIN, Individually and in his
official capacity and in his capacity, DENNIS FRAINE,
Individually and in his official capacity,
JERALD A. MAYHEW, Individually and in his
official capacity, JOHN EMIDY, Individually and
in his official capacity, and EDWARD WIRTANEN,
Individually and in his official capacity.
          DEFENDANTS

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO THE DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

    I.    FACTUAL STATEMENT

As stated in factual background paragraphs 13 through 43 of the Complaint, the Plaintiffs do indeed claim that the named Defendants, in both their personal and professional capacities, did indeed violate the Plaintiff Paul Watson's civil rights, and that their actions resulted in damage to all the Plaintiffs based on a variety of claims. These actions were on-going and continuing from the period of 1989 through 2002.

II.     ARGUMENT

    a.  OFFICIAL CAPACITY DEFENDANTS

In the Defendants' Memorandum in Support of their Motion for Partial Dismissal (the "Defendants' Memorandum"), the Defendants' rely on two Massachusetts' cases for the purpose of seeking to dismiss claims against the Defendants individually and in their official capacity as such claims are redundant. However, neither of the cited cases state that the claims are duplicative and therefore should be dismissed. Rather, the O'Malley case clearly states that it may be necessary to name an official in their individual capacity to avoid the State's sovereign immunity defense. O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 n. 13, 613 N.E.2d 641, 648 (1993). Further, qualified immunity principles under the Massachusetts Civil Rights Act (the "MCRA"), Count V of this Complaint, are limited, depending upon the Plaintiff's proof that these acts were discretionary rather than ministerial.[1] Howcroft v. City of Peabody, et al, 51 Mass. App. Ct. 573, 595, 747 N.E.2d 729, 746 (Mass. App. Ct. 2000). Therefore, it is necessary and proper to name the responsible parties in both capacities. Additionally, the Plaintiffs' claim for intentional infliction of emotional distress is not barred by governmental immunity, thereby making it allowable to name then in their official capacities. Howcroft, 747 N.E. 2d at 747. *See also*, Spring v. Geriatric Authy. Of Holyoke, 394 Mass. 274, 286 n.9, 475 N.E.2d 727, 735 (1985).

---

[1] This standard is applicable to both the MCRA claims and the Plaintiffs' two claims for violation of 42 U.S.C.S. § 1983, Counts VII and VIII, neither of which are subject to this Partial Motion to Dismiss.

Due to the varied and numerous counts resulting from the Defendants' actions, it is proper to name them in both their personal and official capacities.

Based upon the preceding, the claims should survive against the Defendants in both their official and personal capacities.

### b. COUNT I – MALICIOUS PROSECUTION

The claim for malicious prosecution in this case arises from not one, but numerous actions taken by the town and its officials against the Plaintiffs. The first wrongful action was filed in December 1990, the final action beginning with a wrongful eviction in January 2002 followed by numerous court appearances. All but one of those charges was ultimately dismissed in the favor of Watson and the Mitson Realty Trust. The statute of limitations for a malicious prosecution claim is three years, thereby allowing that the filing of this lawsuit in July 2004 was made in a timely manner. See, M.G.L. c. 260, § 2A.

In order to address the questions raised by the Defendants regarding the tolling of the statute of limitations, one need only look to the facts of this case in light of the controlling law. The Mitson Realty Trust purchased the property in question in 1985 (the "Property"). Throughout the later period of the 1980s, the Trust reported numerous issues to the Town relating to safety issues created by the former owner. The former owner was a continuing tenant at the property, occupying the greatest area of rental space. Despite numerous requests to address these issues the Town continually refused to investigate. Then in 1990 the Town filed its first legal action against Mr. Watson and the Trust for safety violations which stemmed from the acts of the Town itself. This case was

ultimately dismissed with no liability found on the part of Watson or the Trust. This case was followed by continuing threats by the Town and attempts to close the Plaintiffs' business and rental property.

The second lawsuit filed against Watson and the Trust began in 1998. As a result of that litigation the building was closed in 1999. Again, the facts at issue arose from the complaints against the prior owner that the Town refused to investigate. Rather, these allegations were turned toward Watson and the Trust and the Town took no responsibility for their former lack of action on the matters.

After the resolution of the 1998 case Mr. Watson continued to operate his business at the Property. In January of 2002 he was forcibly removed by the town, and thereafter charged again with criminal violations. These charges were also ultimately dismissed, with the exception of the charge of being a disorderly person. Mr. Watson felt forced to agree to this charge, as he no longer had the financial ability to continue fighting baseless charges. Clearly, these issues were continuing and covered the period of 1988 through the filing of this lawsuit.

This issue has been litigated time and time again within the Commonwealth. These events are all intrinsically linked to the continuing wrongful actions of the Town and its officials. The statute of limitations does not toll until the improperly filed claims against the individual are terminated in his favor. Meehan v. Town of Plymouth, 167 F.3d 85, 88-89 (1st. Cir. 1999). This continuation of wrongful acts and the decision by the Defendants to refuse to hold the person truly responsible for the property's deficiencies amounts to a continuing tort. See, Limone, et al. v. United States of America, et al, 336 F.

4

Supp. 2d 18, 25-26  (D. Mass., September 17, 2004).  As the filing of this lawsuit took place well within three years from the time that the final criminal charges were dismissed, the claim for malicious prosecution survives.  <u>Malcom Emory v. Vincent Logan, et al</u>, 801 F. Supp. 899, 901 (Dist. Mass. 1992).

With regard to the individual liability of many of the named Defendants, their liability is clear.  An individual that participates in the continuation of wrongful criminal proceedings has the same liability as if he has initiated those same proceedings.  <u>Restatement (Second) of Torts § 655</u> (1976).

Based upon the preceding, the claim for malicious prosecution should not be dismissed.

    c.  COUNT II – MALICIOUS ABUSE OF PROCESS

The claims of malicious prosecution and malicious abuse of process are similar, but distinguishable in this matter.  Malicious prosecution refers to litigation instituted wrongfully, with malice, and terminated in the favor of the defendant. <u>Nadeau v. State</u>, 295 A.2d 107, 116 (Maine 1978). However, abuse of process arises with the use of legal proceedings for an improper, collateral objective.  See, e.g., <u>id</u>. at 117.

The claim of abuse of process is given wider discretion, regardless of timing, if the plaintiff can show an improper use of process "for an immediate purpose other than that for which it was designed and intended". <u>Restatement (2d) of Torts § 682,</u> at 475 (1977).  See also, <u>Simon v. Navon</u>, 71 F.3d 9, 14-5 (1st. Cir. 1995). In the case at hand, the Town and its officials repeatedly filed civil and criminal actions in their attempt to have the building vacated for their own

5

purposes, rather than for the alleged purposes of having the building's resources altered.

The issue of the tolling of the statute of limitations is analogous to the same issue regarding the claim for malicious prosecution. While the standard is a three year statute of limitations, the time is tolled throughout the ongoing and continuing violations of the Defendants.

Further, the individuals named in both their personal and official capacities should be responsible as such. Although not each named individual is listed as having participated in each act, their involvement in the process as a whole can be inferred. Succi v. United States Immigration and Naturalization, 405 F.3d 45, 49-50 (1st. Cir. 2005).

Finally, the Defendants' actions in evicting Mr. Watson in 2002 are clearly a continuation of the Defendants' wrongful use of the legal system. The Town claims to be the valid owner of the Property based upon tax takings in 1991 and 1993. However, that same Town continued to bill the Plaintiffs, as property owners, for taxes owed on the Property through the date of the eviction. See Exhibit A. No proper eviction procedure was ever undertaken by the Defendants, rather, they elected to criminally charge Mr. Watson for being on a premises that they allegedly in fact owned.

Based upon the preceding, the claim for abuse of process should not be dismissed.

d. COUNT III– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Defendants again address the issue of the appropriate statute of limitations. As this is the only basis made for dismissal, that is all that will be addressed. The Defendants have properly reported that the statute of limitations for this tort is three years, pursuant to M.G.L. c. 260, § 2A.

Assuming, *arguendo*, that the statute of limitations would bar certain acts of the Defendants under this count, the actions during the eviction and subsequent criminal proceedings in 2002 are well within the necessary time frame.

The Plaintiffs believe that the Town and those acting on its behalf wrongfully evicted Watson, physically assaulted him during that eviction, and knowingly brought criminal and civil claims against him that they knew were without merit. These actions were based on malice and ill-will toward Watson, and stem, at least in part, from discrimination toward his Jamaican heritage.

This claim is timely and should proceed against the named Defendants in their personal and official capacities. The Plaintiffs acknowledge that the Town itself is statutorily exempt from liability.

e. COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The Plaintiffs acknowledge the Defendants' position regarding the dismissal of the claim for negligent infliction of emotional distress, and do not oppose the same.

f. COUNT V – STATE CIVIL RIGHTS ACT

The Plaintiffs believe their claims under M.G.L. c. 12, §§ 11H and 11I are well pleaded and based upon abundant factual history. While the Plaintiffs' claims under the Massachusetts Civil Rights Act (the "MCRA") are specifically plead in paragraphs 76 through 82, the factual bases there under are delineated throughout the complaint.[2]

Despite the Defendants' contentions otherwise, the ongoing acts of the Town and the other Defendants do rise to the level of violations of the MCRA. Defendants are correct that the standard for an MCRA claim are that their "(1) exercise or enjoyment of rights secured by the Constitution or the laws of the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion'".[3] The MCRA provides that a Plaintiff's claim must may arise from acts such as threats, intimidation or coercion. M.G.L. c. 12, §11I; Layne v. Superintendent, Mass. Corr. Inst., 406 Mass. 156, 546 N.E.2d 166 (1989).  As stated throughout this memorandum, prior pleadings and discovery, the Plaintiffs claim such violations occurred with the continuing baseless actions filed against Watson and the Trust, the Defendants' attempts to cause tenants at the Property to vacate, continued threats of law suits and imprisonment, the closing of the business at the Property in question, and the physical confrontation by the Town during the eviction in January 2002.

---

[2] Such claims are made in paragraphs 40, 41, 43, 49, 56, 60, 62, 63 and others.
[3] Defendants' Memorandum at pages 7 and 8.

To rise to the level of threats, intimidation and coercion, certain standards must indeed be meet. Under the statute, a threat is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, 631 N.E.2d 985, 990 (1994), cert. Denied, 513 U.S. 868, 115 S. Ct. 188 (1994).  Intimidation "involves putting in fear for the purpose of compelling or deterring conduct. Ibid. Finally, coercion is "the application to another of such force, *either physical or moral*, as to constrain him to do against his will something he would not otherwise have done". Ibid., quoting from Deas v. Dempsey, 403 Mass. 468, 471, 530 N.E.2d 1239, 1241 (1988) [emphasis added].

In addition to approximately 14 years of harassment and threats from the Defendants, Watson was also subject to a physical assault during a wrongful eviction.  So, despite case law that is somewhat unclear on the need for a physical confrontation, that element is fulfilled in this matter. Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 566, 646 N.E.2d 139, 149 (1995) cert. denied, 516 U.S. 931, 116 S. Ct. 337 (1995).

The Defendants are incorrect when they state that "the actions alleged are not claimed to be actions intended to compel Watson to do something apart from his property."[4]  Rather, the Plaintiffs believe that the Defendants' actions were part of a larger scheme to recover the Property and develop for its own financial gain.  As recently as February 3, 2006, Town Selectman Ann Odabashian commented in the Telegram and Gazette on her "five year crusade" to turn the Property into senior housing owned and operated by the Town.  See Exhibit B.

---

[4] Defendants' Memorandum at page 9.

9

The Defendants also rely on the State's interest in developing property to justify the Defendants' actions. However, the Courts have ruled that such actions may indeed be actionable. Specifically, statements alone of selectmen that "they would take any actions necessary to stop development" were left to the trier of fact to determine if they violated the property owner's rights. Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 781, 506 N.E.2d 1152, 1159 (1987). Further, a building inspector's threats to arrest a property owner for minor infractions were sufficient for a trial on the merits of the claim. Tortora v. Inspector of Bldgs. of Tewksbury, 41 Mass. App. Ct. 120, 123 668 N.E.2d. 876 (1996).

Finally, the Defendants again raise the issue of statute of limitations. Despite the fact that the physical assault accompanying the wrongful eviction in 2002 clearly falls within the statute of limitations, the Plaintiffs further argue that the continuing pattern of threats, coercion and the filing of meritless claims amount in total to fourteen continuous years of violations of the Plaintiffs' state civil rights. The jury must look to the aggregate facts in determining whether or not the Defendants violated the MCRA. Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 753, 780 N.E.2d 926, 936 (2002). This "continuing violation" theory has been utilized when there may not be one single act sufficient to begin the limitations period. Hiller v. Lesch, et al, 1986 U.S. Dist. LEXIS 18005, 7 (Dist. MA. 1986), citing Velazquez v. Chardon, 736 F.2d 831, 833 (1st. Cir. 1984).

Based upon the preceding, the claim for violations of M.G.L. c. 12 should not be dismissed.

    g. COUNT VI – MGL C. 258

Once again the Defendants rely on notice and statute of limitations issue in their attempt to have Count VI dismissed. As this is the only basis made for dismissal that is all that will be addressed.

The Superior Court of Massachusetts has already ruled on the issue of notice presentment and the statute of limitations. They have held that in circumstances where the negligence is on-going the notice presentment period does not expire because the statute of limitations is tolled. <u>Colonial Color Corp. v. Massachusetts Highway Dept.</u>, 10 Mass. L. Rep. 425, 7-8 (1999). As in this case, when the conduct is claimed to be a continuing event, the two-year presentment period raised by the Defendants is tolled as a result. <u>Doe v. Town of Blandford</u>, 402 Mass. 831, 525 N.E.2d 403 (1988).

Accordingly, despite the original notice presentment to the Town, the negligence was ongoing through 2002 and, therefore, this claim is timely and should not be dismissed.

    h. COUNTS IX, X, and XI – LOSS OF CONSORTIUM

The Defendants initially rely upon the notion that all of the preceding claims should be dismissed, and therefore no loss of consortium claim based upon those issues could survive. As previously stated, the Plaintiffs believe that all of these actions will survive this Motion to Dismiss, with the exception of the claim for Negligent Infliction of Emotional Distress. Therefore, the Defendants' initial argument fails.

The Defendants next argument is similar to that raised by the Defendants in their request to have Count VI dismissed. As discussed above, the wrongful actions of the Defendants continued for many years, resulting in a continuing violations.  This continuing violation tolled the presentment period.  The Defendants' contention that no presentation was ever made is incorrect. In the same 1992 presentment letter proffered by the Plaintiffs' prior counsel, direct reference is made to the "personal anguish" also suffered by Janet Watson. With regard to Andrew and David Watson, those individuals put the Town on notice at many of the Court proceedings. They testified about their involvement in the matter and the impact that the Defendants' actions were having on them.

Finally, the Defendants argue that because neither State nor Federal civil rights claim violations allow for loss of consortium claims that these claims should be dismissed. However, the Complaint does not allege that the loss of consortium claims arise from the Defendants' violations of the state and federal civil rights acts.  Rather, the Complaint alleges that the individuals making these claims have rights arising from the injuries suffered by Paul Watson.  Aside from the civil rights claims there are six (6) other claims against the Defendants. Under the laws of Massachusetts, these loss of consortium claims are independent of the claims suffered by the injured person, and therefore must be determined separately.  <u>Lareau v. Page</u>, 39 F.3d 384, 391 (Dist. Mass. 1994). Accordingly, the trier of fact would review the loss of consortium claims separately from *each* claim alleged in the Complaint.  By way of example, a person has an unequivocal right to loss of consortium for intentional infliction of

emotional distress suffered by her spouse. Agis v. Howard Johnson, 371 Mass. 140, 146-7, 355 N.E.2d 315, 320 (1976).

In light of these facts the three counts for loss of consortium should not be dismissed.

### i. COUNT XII – INTENTIONAL INTERFERENCE WITH CONTRACT

The Defendants make two arguments in their attempt to dismiss this claim. The first of which is the inclusion of only the name of Defendant Ranieri in the "Wherefore clause" of the claim. The exclusion of the remaining Defendants, referenced in the *preceding* paragraph, was merely a typographical mistake. It is somewhat disingenuous for the Defendants to claim that this clerical error absolves the remaining Defendants from responsibility for their actions. This amount to harmless error and the Plaintiffs should be allowed to amend that single paragraph in the complaint.

The remaining issue is, again, the statute of limitations. As described repeatedly above, the actions by the Defendants were continuing acts over a significant period of time, and therefore the statute of limitations was tolled until no sooner than January 31, 2002.

For these reasons the count for intentional interference with contractual relations should not be dismissed.

### j. COUNT XIII – SLANDER

The Defendants should not be entitled to hide behind the fact that many of the statements were made in bad faith and with the intent of causing the Plaintiffs' tenants to leave the Property. It is now clear that the Town and its officials sought

13

to gain control of the Property for its own use.  As a means to an end, the Town, through the remaining Defendants, acted in concert to exaggerate the state of the Property, to put the Plaintiffs' tenants in fear for their safety, all while they failed to investigate claims made by the Plaintiffs regarding wrongdoing by third parties that was in fact damaging the safety status of the Property.

It is recognized that the Town may have had a legitimate purpose in pursuing its concerns regarding the Property. However, they are not given carte blanche' to make malicious statements that are unnecessary in reaching a resolution to the matter.  Their ability to make inquires and release statements does not include the right to make excessive statement if they are made with malice toward the aggrieved party.  <u>Tynecki v. Tufts Univ. Sch. Of Dental Medicine</u>, 875 F. Supp. 26, 35 (Dist. Mass. 1994).

The Defendants also state that the Town did indeed take tax title to the Property and that the Plaintiffs acknowledge the same in their Complaint. It is interesting to note that the safety issues allegedly plaguing the Property continued after the tax takings, and that the Town did nothing to evict, rightfully or wrongfully, the Plaintiff tenant until eleven years later.  It seems counterintuitive that if the safety of the mill was compromised enough for the Defendants to approach each of the Plaintiffs' tenants, that the Town would allow Mr. Watson to remain for an additional eleven years.

III.    CONCLUSION

For the reasons stated above, the Plaintiffs believe that the dismissal of any claims other than the negligent infliction of emotional distress would be

14

inappropriate. The vast majority of the Defendants' bases for dismissal relate to statute of limitations concerns. However, the Plaintiffs' claims stem from fourteen years of on-going and continuous wrongful actions by the Defendants. These issue should survive and the opportunity should be given for a jury of the Plaintiffs' peers to review the case history and the Defendants' actions.

                                                               Respectfully Submitted,
                                                               The Plaintiffs,
                                                               By their counsel,

                                                               <u>/s/ James P. Ehrhard</u>
                                                               James P. Ehrhard, Esq.
                                                               BBO 651797
                                                               Wendy M. Mead, Esq.
                                                               BBO 635333
                                                               Kressler & Ehrhard, PC
                                                               11 Pleasant Street, Ste. 200
                                                               Worcester, MA  01609
                                                               TEL (508) 791-8411
                                                               FAX (508) 752-6168

DATED: February 8, 2006

## CERTIFICATE OF SERVICE

I, Wendy M. Mead, hereby certify that I have serve a copy of the this Opposition and Memorandum by first class mail to the parties listed below:

Martin J. Rooney, Esq.                    Richard T. Corbett, Esq.
27 School Street                          McLucas & West, PC
Boston, MA  02108                      141 Tremont Street, 4th Fl.
                                              Boston, MA  021111


                                                               <u>/s/ Wendy M. Mead</u>
                                                               Wendy M. Mead

Dated: February 8, 2006